OPINION OF THE COURT
Meyer, J.
When a single debt is secured by a mortgage of property of the corporate debtor and by a mortgage of the separate property of an individual guarantor, the failure to obtain a deficiency judgment after the sale of the corporate debtor’s *182 property in a foreclosure action in which the guarantor is a party defendant bars further action to foreclose the guarantor’s mortgage or on the guarantee (RPAPL 1371 [3]). The order of the Appellate Division should, therefore, be affirmed, with cost.
I
Plaintiffs loaned $35,000 to Journey’s End Construction Corporation and received mortgages on three of its properties in Shirley and Mastic, New York, as collateral for the debt. The loan was personally guaranteed by Sanford and Sue Kreisler, principals of the corporation. It was guaranteed also by Jeanette Palmer, who secured her guarantee by giving a second mortgage on property she owned in Sayville.
In October 1975, the corporation defaulted in its payments on the debt. By summonses both dated December 28, 1976, plaintiffs sought to foreclose on property in Shirley, one of the properties covered by the corporate mortgage, and, in a separate action, on the guarantor’s mortgage. The summons and complaint to foreclose on the corporate property was served by substituted service on or about January 13, 1977. The complaint named Jeanette Palmer as a defendant and recited that she was a guarantor of the corporate debt. The summons and complaint to foreclose on Jeanette Palmer’s Sayville property (the present action) was served on her on March 3, 1977.
Defendants defaulted in appearing in both proceedings. The foreclosure of the corporate property resulted in a Referee’s deed to plaintiffs dated October 11, 1977, but no motion for a deficiency judgment was ever made by plaintiffs. Plaintiffs then scheduled a foreclosure sale in the present action of the Palmer Sayville property for December 23, 1977. Sale was, however, delayed by negotiations between the parties. When those negotiations broke down defendants sought and ultimately obtained permission to file an answer. The answer served pleaded as an affirmative defense that by reason of plaintiffs’ failure to move for a deficiency judgment within 90 days after delivery to them of the deed to the Shirley property, foreclosure of the Sayville property was barred by RPAPL 1371 (3).
Special Term, noting that plaintiffs neither sought to foreclose on all properties in one action nor asked permission to bring separate actions (cf. RPAPL 1301), found it unnecessary to consider whether leave should be granted nunc pro tune. It *183 held that because plaintiffs had failed to move for a deficiency judgment in the earlier action, RPAPL 1371 (3) required that the proceeds of sale in that action be deemed to be in full satisfaction of the mortgage debt. The Appellate Division affirmed in a short memorandum (113 AD2d 882).
The appeal is before us by our leave (67 NY2d 601). Plaintiffs argue that the purpose of RPAPL 1371 was to protect the mortgage debtor from multiple lawsuits, that the authorities cited by the courts below do not deal with the single debt-multiple mortgage situation here presented, and that no claim having been made against defendant Palmer in the first foreclosure action, the judgment in that action did not affect her. We conclude that plaintiffs take too limited a view of the purpose of the statute in its present form and, therefore, affirm.
II
Plaintiffs correctly state the purpose of so much of RPAPL 1371 as was enacted by the Revised Statutes of 1829 (vol 2, part III, ch I, tit II, art 6, § 151 ff). The 1829 enactment changed the prior common-law rule, an exception to the general rule that equity does justice completely and not by halves, that a deficiency judgment could not be obtained in a foreclosure action and had to be obtained in a separate action at law (Jamaica Sav. Bank v M.S. Investing Co., 274 NY 215; Frank v Davis, 135 NY 275). Its purpose "was to relieve parties from the expense and vexation of two suits, one equitable and the other legal, where the whole controversy could be adjusted in the one suit” (Frank v Davis, supra, at p 278). Under its provisions "[t]he deficiency was to be ascertained by a sale of the mortgaged premises, and not by the estimates of witnesses or other less satisfactory evidence” (id., at p 279).
That purpose was materially expanded and changed as a result of the depression of the early 1930s. In his message to the extraordinary session of the Legislature proposing enactment of relief for mortgage debtors, which ultimately became the Laws of 1933 (ch 794), Governor Herbert H. Lehman stated:
"It is evident that the State will have to intervene to prevent to some extent the hardships now being occasioned by foreclosures of mortgages on homes and farms. Owing to the current depression, thousands of our citizens who have in *184 vested their life savings in individual homes now find themselves faced with the prospect of having these homes taken from them.
* * *
"The hardship has been seriously aggravated by reason of the fact that upon foreclosure sales, deficiency judgments have been entered against home owners entirely out of line with the fair value of the property. In this way not only does the small home owner lose his home but he frequently becomes saddled with an excessive deficiency judgment for the rest of his life. The cause of these deficiency judgments is again the absence of any real estate market, and the consequent reluctance to bid on the foreclosure block.
* * *
"The problem connected with the securing of deficiency judgments is almost as important as that of mortgage foreclosures. I am of the definite opinion that an end must be made of the present system of obtaining exaggerated deficiency judgments. A deficiency judgment should bear some definite relation to the real value of the property, rather than to the price established at the forced auction sale. Not only homes but all forms of real estate are equally affected by this. I believe that such relief should be extended to all real estate. Authority should be granted to the Supreme Court to determine the fair value of the real estate foreclosed, irrespective of the price bid, and to limit the deficiency judgment only to the difference between that determined value and the amount of the bond. The burden of proving such value should be placed upon the mortgagee foreclosing the property, and in the absence of such proof the presumption should be that the value of the property is at least the amount of the first mortgage.” (Public Papers of Herbert H. Lehman, 1933, at 140, 141-142.)
The emergency provisions enacted by Laws of 1933 (ch 794) became Civil Practice Act §§ 1083-a, 1083-b and 1083-c. Thereafter in 1938 the Joint Legislative Committee on Mortgage Moratorium and Deficiency Judgments reported to the Legislature that: "It would seem that the present provisions with respect to deficiency judgments, namely, section 1083-a of the Civil Practice Act, are fair both to the mortgagor and mortgagee, both in times of emergency and in normal times, and that *185 by appropriate amendment it might well be continued beyond the emergency period as a permanent part of the Civil Practice Act with respect to existing mortgages, irrespective of what position the Legislature may take with respect to abolishing deficiency judgments on mortgages thereafter executed. Certainly no one can justify a mortgagee having, for example, a $5,000 mortgage on a piece of property worth $10,000 at the time the mortgage was given and still worth $7,000 at the time the property was sold on foreclosure bidding in said property for $4,000 and taking a deficiency judgment for the balance due on the principal of $1,000 and perhaps another $1,000 for interest, taxes and costs.” (NY Legis Doc, 1938, No. 58, at 35-36.) As a result of that report Civil Practice Act § 1083 was amended by adding to it, in identical language, all but the first sentence of section 1083-a, and in 1962 Civil Practice Act § 1083, with no change other than the insertion of subdivision numbers and the deletion of an obsolete provision relating to actions pending when the 1938 amendment took effect, became RPAPL 1371 (L 1962, ch 312, § 27).
Thus, avoidance of a multiplicity of lawsuits was one of the purposes of providing by statute for entry of a deficiency judgment in a foreclosure action (RPAPL 1371 [1]) and proscribing a separate action to recover such a deficiency without leave of court (RPAPL 1301). But the broader reach of the 1938 amendments was to benefit the mortgagor and burden the mortgagee by requiring that in the computation of any deficiency the mortgagor be credited with the market value as determined by the court or the sale price of the property, whichever is higher, and by mandating that, as to a mortgagee who fails to move for a deficiency judgment, "the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist” (RPAPL 1371 [3]).
Ill
Not long after the 1938 amendment to Civil Practice Act § 1083 (L 1938, ch 502), we declared with respect to its multiplicity of suits purpose that it was the settled rule that leave to bring a separate action would not be granted as to "a party who could have been made a defendant in the foreclosure action unless special circumstances were shown which manifestly required that course” (National City Bank v Gel *186 fert, 284 NY 13, 22, revd on other grounds 313 US 221). And the same case made clear that the enactment we now know as RPAPL 1371 (2) and (3) "is not emergency legislation, is not confined to cases where the sale price shocks the conscience, and is applicable whether a purchaser on foreclosure is the mortgagee or is a third party” (id., at p 18).
We need not decide whether special circumstances warranting a grant of leave to bring this second action existed, for it is undisputed that plaintiffs never sought permission to begin it, that defendant Palmer not only could have been[1] but was made a party defendant in the first, Shirley, foreclosure, and that both properties are situated in the same county.[2] Nor need we decide whether defendant Palmer, who defaulted in appearance in the Shirley foreclosure, would have been entitled to notice of the application for a deficiency judgment in that action had one been made,[3] for, as noted above, no such application was made.
It is, moreover, clear that the "party against whom such judgment is sought” within the meaning of RPAPL 1371 (2) is not limited to the mortgagor (Klinke v Samuels, 264 NY 144, 149; Vanderbilt v Schreyer, 91 NY 392, 396, 399; see, Honeyman v Hanan, 275 NY 382, appeal dismissed 302 US 375; City Bank Farmers Trust Co. v Ardlea Incorporation, 267 NY 224). Had application been made in the prior action for judgment fixing the deficiency resulting from sale of the Shirley property, the determination made by the court would, therefore, have fixed the amount obtainable by plaintiffs on defendant Palmer’s guarantee and mortgage and would have been binding upon her.
That several mortgages have been given to secure a single debt does not authorize separate foreclosure actions when the properties involved are all subject to the jurisdiction of one court. What is required, rather, is that, unless the court orders otherwise, there be separate sales of the security in such order as the court may fix, and an application after each sale and before the next occurs for determination of the deficiency resulting from the sale, for otherwise what remains due and payable from the additional security provided cannot *187 be known. Were no deficiency application made after each such sale, a guarantor who has provided security additional to that given by the debtor and who, like the debtor, is entitled to the protection of RPAPL 1371 (3) when no deficiency judgment is obtained (TBS Enters. v Grobe, 114 AD2d 445; Kleet Lbr. Co. v Foley Constr. Corp., 91 AD2d 1014; Kings County Sav. Bank v Fulton Sav. Bank, 268 App Div 452; Merchants Natl. Bank & Trust Co. v Wagner, 93 Misc 2d 224; State Bank v Amak Enters., 77 Misc 2d 340; see, Bedcro Realty Corp. v Title Guar. & Trust Co., 290 NY 520; Statewide Sav. & Loan Assn. v Canoe Hill, 44 NY2d 843, ajfg 54 AD2d 1018; Band Realty Co. v North Brewster, 59 AD2d 770) would be deprived of that protection. That the deficiency in a multiple security situation is determined following sale on foreclosure of the security first sold does not affect the applicability of the statute or permit the institution of separate proceedings without permission of the court (cf. Frank v Davis, supra, at p 279).[4] To the extent that Bodner v Brickner (29 AD2d 441) and Klein v Gray (127 NYS2d 459), relied upon by plaintiffs, are to the contrary they are not to be followed.
For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order affirmed, with costs.

. RPAPL 1313 provides that “[a]ny person who is liable to the plaintiff for payment of the debt secured by the mortgage may be made a defendant in the action.”

. See, CPLR 507; 2 Weinstein-Korn-Miller, NY Civ Prac fl 507.07.

. See, RPAPL 1371 (2); CPLR 3215; and Siegel, NY Prac § 296, at 351.

. To be distinguished are cases concerning junior mortgages on the same property (e.g., Dow Estates, Inc. v Smith, 290 NY 484), for in such a case sale under the senior mortgage extinguishes the junior, though not the obligation which it secures.