### In re PITTSFORD POLO CLUB, INC., Debtor.

### Bankruptcy No. 93–21185.

United States Bankruptcy Court, W.D. New York.

Nov. 9, 1995.

Warren H. Heilbronner, Rochester, NY, for Mortgagees Boylan, Brown, Code, Fowler, Vigdor & Wilson.

Michael E. O'Neill, of counsel, Phillips, Lytle, Hitchcock, Blaine & Huber, Rochester, NY, for Pittsford Polo Club, Inc., et al.

William C. Rieth, Rochester, NY, for Debtor.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On May 20, 1993, the debtor, Pittsford Polo Club, Inc. ("Pittsford Polo"), filed a

petition initiating a Chapter 11 case. On its schedules, Pittsford Polo listed its ownership of four parcels of real property as being covered by a Note and first mortgage (the "Adams Group Mortgage"), dated March 11, 1992 and recorded in the Office of the Clerk of Monroe County on March 12, 1992. The four parcels covered by the Adams Group Mortgage were 3400 Clover Street ("Clover Street"), 122 North Wilmarth Road ("Wilmarth Road"), 134 Douglas Road ("Douglas Road") and vacant land in Farmington, New York (the "Farmington Property"). The schedules further indicated that the Adams Group Mortgage had an outstanding balance of approximately $800,000 and that Clover Street and Wilmarth Road, which were contiguous properties, had an aggregate value of $1,200,000, Douglas Road a value of $300,000 and the Farmington Property a value of $1,000,000.

On July 27, 1993, an Order (the "Clover Street Stay Order"), consented to in writing by the President of Pittsford Polo, Charles N. Bonora ("Bonora") and by its attorney, presented to the Court *ex parte*, was entered which modified the automatic stay provided by Section 362 to permit the holders of the Adams Group Mortgage to foreclose the Mortgage on the Clover Street and Wilmarth Road properties. However, the Clover Street Stay Order required a further Order of the Bankruptcy Court before the Adams Group could publish a notice of sale and conduct a foreclosure sale of the properties. No other restrictive or qualifying language was contained in the Order, and the motion papers did not advise the Court: (1) why the stay was not being modified to permit Douglas Road and the Farmington Property to be included in the foreclosure; or (2) the details of any overall agreement between the parties. The motion papers did indicate, however, that: (1) there was in excess of $932,000 then due to the Adams Group; (2) the proposed modification of the automatic stay would protect both the interests of the Adams Group and afford Pittsford Polo a further opportunity to sell Clover Street and Wilmarth Road, which it valued at $1,200,000, for an amount in excess of the liens on the properties; and (3) the Order was structured so that prior to any foreclosure sale, the

issues of the valuation of the properties, the amounts due to the Adams Group and the necessity for the properties to be sold in the Chapter 11 case could be revisited.

On November 8, 1993, an Order was entered granting a Motion brought by the Office of the United States Trustee to convert the Pittsford Polo Chapter 11 case to a Chapter 7 case. Throughout its Chapter 11 case and in its opposition to the Motion to Convert, Pittsford Polo alleged that the Clover Street and Wilmarth Road properties had an aggregate value of between $800,000 and $1,000,000, as is, but that as an approved subdivision it would have a wholesale value of in excess of $2,000,000 and a value of in excess of $5,000,000 if building lots were sold individually. However, the town in which the properties were located had twice denied subdivision approval, and there was a pending proceeding in State Court (the "Article 78 Proceeding") contesting the denial. At the time of the hearings on the Motion to Convert, the Debtor had received an offer of $1,330,000 for the Clover Street and Wilmarth Road properties which was contingent upon subdivision approval.

On April 19, 1994, a motion (the "Clover Street Sale Motion") was filed on behalf of the Adams Group to permit it to publish a notice of sale and thereafter conduct a foreclosure sale of the Clover Street and Wilmarth Road properties. At the May 18, 1994 return date of the Motion, Pittsford Polo indicated that there was a sale scheduled for Douglas Road which would generate net proceeds of in excess of $150,000 which could be paid to reduce the amounts due on the Adams Group Mortgage, and that it was hopeful it would receive a favorable decision by mid-July in the Article 78 Proceeding. The hearing on the Clover Street Sale Motion was adjourned to July 13, 1994.

On July 13, 1994, a closing statement was filed with the Court which indicated that after a May 19, 1994 Order abandoning the property had been entered, the Adams Group had received $179,164.60 in connection with a June 8, 1994 sale of Douglas Road.

At the July 13, 1994 adjourned date for the Clover Street Sale Motion, the Court was

advised that no decision had been issued in the Article 78 Proceeding. The attorneys for the Adams Group further advised the Court that in April a Judgment of Foreclosure and Sale had been entered in the State Court foreclosure proceeding for $1,025,000 and that an appraisal prepared for the Adams Group in January of 1994 indicated that without subdivision approval the Clover Street and Wilmarth Road properties had an aggregate value of only $665,000.

On July 20, 1994, an Order was entered permitting the holders of the Adams Group Mortgage to publish a Notice of Sale and conduct a foreclosure sale of the Clover Street and Wilmarth Road properties in the pending State Court foreclosure proceeding.

On November 7, 1994, a motion (the "Farmington Stay Motion") was filed on behalf of the Adams Group. The Motion requested that the automatic stay provided by Section 362 be modified to permit the Adams Group to foreclose its mortgage on the Farmington Property. The Motion further indicated that: (1) after the application of the net proceeds from the foreclosure sale of Clover Street and Wilmarth Road in the amount of $573,873.44 and the voluntary sale of Douglas Road, there remained in excess of $337,000 due on the Adams Group Mortgage; (2) there were unpaid real property taxes due on the Farmington Property of in excess of $24,000; and (3) an attached appraisal set the fair market value of the Farmington Property at $550,000.

There was no opposition to the Farmington Stay Motion. On November 28, 1994, in accordance with the Court's default procedure, an Order (the "Farmington Stay Order") was entered without a hearing modifying the automatic stay to allow the Adams Group to commence a mortgage foreclosure proceeding for the Farmington Property and providing that the Trustee's interest in the Property was abandoned except for any surplus monies generated in connection with any foreclosure sale.

On August 4, 1995, a motion (the "Deficiency Judgment Motion") was filed on behalf of the Adams Group which requested that the automatic stay provided by Section 362 be modified to permit it to move for a deficiency judgment in New York State Supreme Court in connection with its foreclosure of the Clover Street and Wilmarth Road properties.

The Deficiency Judgment Motion alleged that: (1) the Clover Street and Wilmarth Road properties had been sold at foreclosure sale on September 30, 1994 and there remained a deficiency on the Adams Group Mortgage of $337,408.00 after the application of the proceeds of the foreclosure sale and the Douglas Road sale; (2) after the entry of the Farmington Stay Order, the Adams Group commenced a mortgage foreclosure proceeding in New York State Supreme Court and Bonora took the position that the Adams Group was barred from further pursuing its Mortgage by the provisions of Section 1371 of the New York Real Property Actions and Proceedings Law[1] ("Section 1371"); (3) the Clover Street Stay Order did not authorize the Adams Group to seek a deficiency judgment against Pittsford Polo in the New York State mortgage foreclosure proceeding authorized to be commenced by the Order; (4) without such authorization, the Adams Group would have been in violation of the automatic stay had it sought such a deficiency; and (5) the Adams Group was now requesting authorization to seek a deficiency judgment in connection with the Clover Street and Wilmarth Road foreclosure proceeding.

1. Section 1371 of the New York Real Property Actions and Proceedings Law provides that:

(2) Simultaneously with the making of a motion for an order confirming the sale, provided such motion is made within ninety days after the date of the consummation of the sale by the delivery of the proper deed of conveyance to the purchaser, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. . . .

(3) If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist.

On August 11, 1995, opposition to the Deficiency Judgment Motion was filed on behalf of Pittsford Polo, a second mortgage holder and Bonora (the "Deficiency Judgment Opposition"). The Opposition alleged that: (1) the April 14, 1994 Judgment of Foreclosure and Sale (the "Foreclosure Judgment"), entered by Justice L. Paul Kehoe ("Justice Kehoe") in the New York State mortgage foreclosure proceeding for Clover Street and Wilmarth Road, which was prepared by the attorneys for the Adams Group, provided that:

"and that if the proceeds of such sale be insufficient to pay the amount reported due the plaintiff, with interest and costs as aforesaid, the whole deficiency or so much thereof as the Court may determine to be just and equitable of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the amount thereof is determined and awarded by order of this Court as provided for in said action;"

(2) the Adams Group had failed to move for a deficiency judgment within the time provided for by Section 1371 and the Foreclosure Judgment; (3) Pittsford Polo and the other defendants in the mortgage foreclosure proceeding commenced by the Adams Group to foreclose the Farmington Property had plead as an affirmative defense, the failure of the Adams Group to make a timely motion for a deficiency judgment; and (4) the Bankruptcy Court's Decision in *In re Tyler,* 166 B.R. 21 (Bankr.W.D.N.Y.1994), required the Adams Group, as a mortgage holder, to comply with the provisions of Section 1371 in the mortgage foreclosure proceeding unless the Court provided otherwise in the Clover Street Stay Order, which it did not.

On August 30, 1995 an additional Affidavit was filed on behalf of the Adams Group (the "Attorney Affidavit") which alleged that: (1) it appeared that the Adams Group no longer needed the relief originally requested in the Deficiency Judgment Motion, since the Bankruptcy Court had already made a deficiency determination sufficient to permit the Adams Group to foreclose the Farmington Property;

(2) on October 17, 1994 the referee in the State Court foreclosure proceeding of the Clover Street and Wilmarth Road properties had delivered a deed of the properties to the Adams Group, the successful bidders at the foreclosure sale; (3) as part of the Farmington Stay Motion, filed with the Bankruptcy Court on November 16, 1994, which was within 90 days of the referee's delivery of his deed, the Adams Group provided a complete deficiency accounting which would have been consistent with the requirements of Section 1371 for a motion for a deficiency judgment in New York State Supreme Court; (4) neither the Pittsford Polo Trustee nor any of the defendants in the pending Farmington Property mortgage foreclosure proceeding in State Court filed opposition to the Farmington Stay Motion; (5) the defendants in the Farmington mortgage foreclosure proceeding should not be able to collaterally attack the Bankruptcy Court's determination that a deficiency existed on the Adams Group Mortgage and that the Adams Group should be allowed to foreclose the mortgage on the Farmington Property to recover all or a portion of its deficiency; (6) the Clover Street Stay Order contemplated that the Bankruptcy Court would determine the value of all of the parcels covered by the Adams Group mortgage as well as any relevant deficiency as various proceedings unfolded; and (7) the Adams Group was now not requesting a modification of the automatic stay to allow it to bring a motion for a deficiency in the Clover Street and Wilmarth Road foreclosure proceeding, but, rather, it was requesting a resettlement of the Farmington Stay Order clarifying that the Court's holding in *In re Tyler* was not applicable to the Clover Street and Wilmarth Road mortgage foreclosure proceedings.

On August 30, 1995 a letter brief was filed on behalf of the Adams Group which asserted that: (1) Pittsford Polo had waived the benefits and provisions of Section 1371; (2) Section 1371 does not specifically require the required motion for a deficiency judgment to be made in a New York State Court; (3) in this case, all of the elements and protections of a Section 1371 deficiency judgment were complied with in the Farmington Stay Motion papers within the time required by Sec-

tion 1371; (4) by failing to oppose the Farmington Stay Motion and the deficiency analysis contained therein, the defendants in the Farmington Property State Court mortgage foreclosure proceeding were collaterally estopped from asserting the failure to comply with Section 1371 or challenging the Bankruptcy Court's determination that a deficiency existed, a necessary finding for the Court to have entered in the Farmington Stay Order.

On September 5, 1995, the parties in opposition to the Deficiency Judgment Motion filed an additional Affidavit (the "Affidavit in Opposition") which asserted that: (1) the Clover Street Stay Order was entered at the consent of all parties on an *ex parte* basis, and was not the result of a determination of the Bankruptcy Court as to the rights and remedies of the Adams Group as the holder of the Adams Group Mortgage; (2) the Bankruptcy Court had not provided in the Clover Street Stay Order or the Clover Street Sale Order that it would retain jurisdiction over any deficiency proceeding should the proceeds of a foreclosure sale of the Clover Street and Wilmarth Road properties not pay the amounts due on the Adams Group Mortgage in full; (3) the Court's decision in *In re Tyler* is clear, that unless excepted from an order modifying the stay, it is contemplated that any required deficiency judgment motion will be made in the state court mortgage foreclosure proceeding authorized to be conducted by the order; (4) the Foreclosure Judgment, prepared by the attorney for the Adams Group, required it to make a deficiency judgment motion in the New York State Supreme Court within the time prescribed by Section 1371; (5) the Deficiency Judgment Motion, as originally brought, confirmed the understanding of the Adams Group that it was required to make a deficiency judgment motion in New York State Supreme Court; and (6) the Farmington Stay Motion was insufficient as a motion for a deficiency judgment under Section 1371, since such a motion requires personal

service and, further, the Motion did not contain required proof of the market value of the property at the date of the foreclosure auction.

On September 6, 1995, the final adjourned return date for the hearing on the Deficiency Judgment Motion, the Court denied the Motion explaining to the parties that it felt that the decision as to whether the Adams Group could at this time make a motion for a deficiency judgment, notwithstanding the provisions of the Foreclosure Judgment, should be made by Justice Kehoe who had entered the Foreclosure Judgment. The Court felt that such a determination, based on all of the facts and circumstances presented, should be made by Justice Kehoe either in connection with the Clover Street and Wilmarth Road foreclosure proceeding or the pending proceeding for the Farmington Property in which the defendants had raised the Section 1371 issues as an affirmative defense.

At the September 6, 1995 hearing, the attorneys for the parties continued to be concerned as to the effect which the Bankruptcy Court ruling would have on the ultimate decision to be made by Justice Kehoe. When the parties were unable to agree upon the form of an order, the Court agreed to issue this written decision.

## DISCUSSION

The automatic stay provided by Section 362(a) of the Bankruptcy Code is intended to and does provide a stay of nearly all actions against a debtor. However, Section 362(b) sets forth a number of exceptions to this broad stay, and Section 362(d) gives the Bankruptcy Court broad discretion to fashion relief from the automatic stay in an appropriate case when requested by a party in interest and after notice and a hearing.[2] The broad discretion of the court to fashion appropriate relief from the stay is clear from the provisions of Section 362(d) itself which allow the Court to terminate, annul, modify or condition the stay.[3]

2. See *In re Schwartz*, 954 F.2d 569, 572 (9th Cir.1992).

3. Section 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating,

■ The ability of a party in interest in an appropriate case to have a bankruptcy court tailor relief from the automatic stay to meet the particular facts and circumstances of its situation places upon that party a responsibility to fully apprise the court of all relevant facts and circumstances and ensure that the relief it obtains is clear, precise and complete. Given the opportunity to obtain tailor-made relief, a party must fully seize the opportunity and then be prepared to live with the relief obtained in the absence of changed or extraordinary circumstances.

■ On April 14, 1994, this Court filed its Decision in *In re Tyler* and held that:

"When ... this Court modifies or terminates the automatic stay provided by Section 362 to allow a party to commence or continue a pending state court mortgage foreclosure proceeding against the debtor's real property, it is the Court's expectation that it has modified or terminated the stay for the completion of all related state court mortgage foreclosure proceedings, including the establishment of any deficiency judgment, unless any such state court proceedings are specifically excepted by the order." 166 B.R. at 25.

Although the Court's Decision in *In re Tyler* was filed after the Clover Street Stay Order was entered on July 27, 1993 and on the same day that the Foreclosure Judgment was entered (which specifically required the Adams Group to make a deficiency judgment motion pursuant to Section 1371), it was filed before: (1) July 20, 1994 when the Order was entered permitting the Adams Group to publish a notice of sale and conduct a foreclosure sale of the Clover Street and Wilmarth Road properties pursuant to the Foreclosure Judgment; (2) the September 30, 1994 foreclosure sale; (3) the October 17, 1994 delivery of the Referee's Deed; and (4) the November 7, 1994 Farmington Stay Motion. Each of these events occurred before the time expired to bring the Section 1371 deficiency judgment motion required by the Foreclosure Judgment.

The following factors might have indicated to the Adams Group that a deficiency judgment motion should have been commenced in New York State Court within ninety days after October 17, 1994 the date of the delivery of the Referee's Deed covering the Clover Street and Wilmarth Road properties: (1) the absence in the Clover Street Stay Order or the Foreclosure Judgment of a specific provision exempting the Adams Group from the provisions of Section 1371 or the holding of the New York Court of Appeals in *Sanders v. Palmer*, 68 N.Y.2d 180, 507 N.Y.S.2d 844, 499 N.E.2d 1242 (1986)[4]; (2) the specific requirement in the Foreclosure Judgment that a deficiency judgment motion be brought pursuant to Section 1371; (3) this Court's Decision in *In re Tyler*; and (4) the fact that after the application of the proceeds of the foreclosure sale of the Clover Street and Wilmarth Road properties and the voluntary sale of the Douglas Road Property the Foreclosure Judgment was not paid in full.

Notwithstanding the foregoing, it does appear that on some level the Adams Group was attempting to work with Pittsford Polo while it was in Chapter 11 and its Trustee after the case was converted to a Chapter 7 case, in that: (1) the Clover Street Stay Order only covered the Clover Street and Wilmarth Road properties and was presented to the Court by consent, presumably after considerable negotiation, with an expressed

---

annulling, modifying, or conditioning such stay.

4. The New York Court of Appeals held in *Sanders v. Palmer:*

That several mortgages have been given to secure a single debt does not authorize separate foreclosure actions when the properties involved are all subject to the jurisdiction of one court. What is required, rather, is that, unless the court orders otherwise, there be separate sales of the security in such order as the court may fix, and an application after each sale and before the next occurs for determination of the deficiency resulting from the sale, for otherwise what remains due and payable from the additional security provided cannot be known.... That the deficiency in a multiple security situation is determined following sale on foreclosure of the security first sold does not affect the applicability of the statute [RPAPL 1371] or permit the institution of separate proceedings without permission of the court. *Id.* at 186–87, 507 N.Y.S.2d 844, 499 N.E.2d 1242 (citations omitted).

intent to afford the Debtor a continuing opportunity to sell those properties at a better price than could be obtained at a foreclosure sale; and (2) the Adams Group agreed to an adjournment of the Clover Street Sale Motion from April to July, 1994 in order to allow Pittsford Polo to sell Douglas Road, reduce the balance due on the Adams Group Mortgage and the Foreclosure Judgment, and have additional time to obtain a decision in the Article 78 Proceeding. Furthermore, neither Pittsford Polo, the Trustee, nor Bonora opposed the Farmington Stay Motion. The Adams Group may have interpreted this as: (1) an act consistent with the actual agreement made with Pittsford Polo and Bonora at the time of the negotiations which resulted in the Clover Street Stay Order, or at least in the spirit of the agreement; (2) a consent to a separate foreclosure proceeding and sale of the Farmington Property and a waiver of the provision in the Foreclosure Judgment that the Adams Group bring a Section 1371 deficiency judgment motion; (3) an acknowledgement that the Farmington Stay Motion constituted the required deficiency judgment motion; (4) an acknowledgement that because this Court had never lifted the stay as to the Farmington Property, the Farmington Property was not under the jurisdiction of the State Court at the time the Foreclosure Judgment was entered, so that but for the specific provision in the Foreclosure Judgment, the holding in *Sanders v. Palmer* may not have required the Adams Group to seek a deficiency judgment before foreclosing on the Farmington Property in a separate foreclosure action once the stay was lifted; or (5) an acknowledgement that the inclusion of the boilerplate 1371 deficiency judgment language in the Foreclosure Judgment and the underlying Complaint was inadvertent.

On the one hand, it may appear disingenuous for Pittsford Polo, the Trustee and Bonora to assert the failure of the Adams Group to comply with the provision in the Foreclosure Judgment that it bring a deficiency judgment motion, since it appears that the Adams Group was attempting to cooperate with Pittsford Polo and the Chapter 7 Trustee to afford them the opportunity to realize the maximum value of the properties covered by the Adams Group Mortgage. On the other hand, the provisions of the Foreclosure Judgment, drawn by counsel for the Adams Group, are clear, and the provisions of Section 1371 and the holding of the New York Court of Appeals in *Sanders v. Palmer* are matters that all commercial attorneys and mortgage lenders in New York State know must be strictly complied with when they are applicable.

There was nothing in the Clover Street Stay Order which exempted the Adams Group from the need to comply with the holding in *Sanders v. Palmer* and the provisions of Section 1371 if they were otherwise applicable.[5] Furthermore, in this case, rather than providing otherwise, as authorized by the decision in *Sanders v. Palmer,* the Foreclosure Judgment specifically required the Adams Group to bring a motion for a deficiency judgment. For that reason, as decided by this Court on September 6, 1995, Justice Kehoe, who entered the Foreclosure Judgment, must decide whether: (1) relief from the provisions of the Foreclosure Judgment can and should be afforded to the Adams Group on the facts and circumstances of this case to allow it now to bring a motion for a deficiency judgment; (2) the need to bring such a deficiency judgment motion was waived or otherwise is not necessary; or (3) the Farmington Stay Motion constituted the required deficiency judgment motion.

---

**5.** This Court believes that notwithstanding the holding in *Sanders v. Palmer,* it can provide for such an exemption in appropriate circumstances if it is properly requested in a motion for relief from the stay. Furthermore, the decision of the Court of Appeals in *Sanders v. Palmer* allows the state court, in appropriate circumstances, to make specific provisions with respect to the requirements of Section 1371, and this Court believes the State Court would make such a provision if an order modifying the stay required it.

Furthermore, if the bankruptcy court intentionally does not terminate the stay on one of multiple parcels that serve as collateral for a single debt, the state court may not have jurisdiction over that parcel within the holding of *Sanders v. Palmer,* and therefore a deficiency judgment motion may not otherwise be required. However, it would always be advisable to clarify this issue in both the applicable bankruptcy and state court orders.

## CONCLUSION

The August 4, 1995 Motion of the Adams Group for relief from the automatic stay to permit it to move for a deficiency judgment in New York State Court in connection with its foreclosure of the Clover Street and Wilmarth Road properties is in all respects denied.

**IT IS SO ORDERED.**