******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# FAIRLAKE CAPITAL, LLC *v.* PETER LATHOURIS ET AL.
## (AC 43872)

Bright, C. J., and Cradle and DiPentima, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants for, inter alia, the alleged breach of a guaranty agreement. The plaintiff alleged that C Co. extended a loan to L Co., evidenced by a note executed on behalf of L Co. by the defendant L, acting as attorney-in-fact for the defendant S, the president of L Co. The note was secured by a mortgage on certain real property located in New York. Additionally, L, individually and as attorney-in-fact for S, executed a guaranty agreement, guaranteeing the debt under the note. L Co. defaulted on its payments, and C Co. commenced an action in New York to foreclose on the property. Thereafter, L Co. filed for bankruptcy, and the Bankruptcy Court issued an order approving the sale of the property pursuant to an approved bankruptcy plan. C Co. assigned its claims against L Co. to the plaintiff, and the plaintiff alleged that the defendants were liable under the guaranty for all amounts remaining due under the note. The defendants filed a motion for summary judgment in which they argued that the plaintiff's claims were barred by the doctrine of res judicata and that, pursuant to New York statute (N.Y. Real Prop. Acts. Law § 1371), it was necessary for the plaintiff to move for a deficiency judgment in order to recover under the guaranty. The trial court denied the motion, concluding that § 1371 did not apply because the property was not sold in a foreclosure action, and the defendants appealed to this court. *Held* that the trial court did not err in denying the defendants' motion for summary judgment, as the plaintiff's claims were not barred by the doctrine of res judicata: by its terms, § 1371 applies only when a foreclosure sale occurs, and, because the property was sold pursuant to a bankruptcy plan, rather than a foreclosure sale, § 1371 did not require the plaintiff to seek a deficiency judgment, the defendants had not filed for bankruptcy and were not parties to L Co.'s bankruptcy proceedings, and, thus, there was no reason for the Bankruptcy Court to address whether there was any deficiency from the sale that would trigger the defendants' obligations under the guaranty; moreover, although the Bankruptcy Court determined the amount that L Co. owed the plaintiff after the sale of the property, the parties agreed to litigate claims arising out of the guaranty agreement in Connecticut state court; furthermore, this court was not satisfied that the plaintiff had an adequate opportunity to litigate its breach of guaranty claims against the defendants in L Co.'s bankruptcy proceeding, and this court was unaware of a case in which a plaintiff has pursued a breach of guaranty claim in a bankruptcy court against a guarantor who was not the subject of the underlying bankruptcy proceeding.

Argued November 17, 2021—officially released March 1, 2022

*Procedural History*

Action seeking damages for, inter alia, breach of a guaranty agreement, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Lee, J.*, denied the defendants' motion for summary judgment, and the defendants appealed to this court. *Affirmed.*

*Todd R. Michaels*, with whom, on the brief, were *Ann H. Rubin* and *Drew J. Cunningham*, for the appellants (defendants).

*Yan Margolin*, pro hac vice, with whom was *Patrick*

*McCabe,* for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendants, Peter Lathouris and Patricia Spanos Lathouris,[1] appeal from the judgment of the trial court denying their motion for summary judgment against the plaintiff, Fairlake Capital, LLC. The defendants claim that the trial court erred in denying their motion for summary judgment because the plaintiff's breach of guaranty claims against them are barred by the doctrine of res judicata. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, viewed in the light most favorable to the plaintiff, and procedural history are relevant to this appeal. The plaintiff commenced the underlying action on April 26, 2017. The plaintiff filed its second amended complaint, which is the operative complaint, on June 26, 2018. Counts one and two of that complaint allege claims of breach of guaranty against Peter and Patricia, respectively, and count three alleges a claim of unjust enrichment against both defendants.

In its memorandum of decision denying the defendants' motion for summary judgment, the trial court summarized the allegations of the operative complaint as follows: "[O]n or about July 7, 2006, [Patricia] executed a statutory short form power of attorney appointing her husband, [Peter], her attorney-in-fact. On August 1, 2006, Carlyle Financial, LLC (Carlyle) extended a loan to Lagoon Development Corporation (Lagoon) in the amount of $1,500,000, evidenced by a note executed on behalf of Lagoon by [Peter], acting as attorney-in-fact for [Patricia], [the] president of Lagoon. The note was secured by and made subject to the terms of a commercial mortgage on real property located in Bronx, New York. Additionally, [Peter], individually and as attorney-in-fact for [Patricia], executed a guaranty agreement, guaranteeing the debt under the note. Pursuant to the note, Lagoon was required to make monthly interest payments commencing on September 1, 2006, with the entire principal balance and all interest due and payable in full on February 1, 2007. Lagoon defaulted on its payments, and Carlyle accelerated the entire debt. On or about October 9, 2009, Carlyle commenced an action in the Supreme Court of the State of New York for Bronx County to foreclose on the mortgaged property.

"The plaintiff further alleges that on or about October 31, 2013, [before the foreclosure case went to judgment], Lagoon filed for Chapter 11 protection in [the] Bankruptcy Court. In an assignment of claim, dated February 12, 2016 . . . Carlyle assigned its claims against Lagoon in the bankruptcy action, as well as the mortgage and guaranty agreement to the plaintiff. The assignment was recorded in Bronx County. The Bankruptcy Court approved the sale of the mortgaged property for $5,000,000, said sale being consummated on December 20, 2016. At the time of the sale, Lagoon owed

the plaintiff $4,160,850, yet the plaintiff only received $1,862,631.54 from the sale of the property, resulting in a shortfall of $2,167,604.57. The plaintiff alleges that the defendants are liable under the guaranty for all amounts due and owing under the note on account of Lagoon's failure to make the payments when they became due."[2]

On October 31, 2018, the defendants filed a motion for summary judgment in which they argued that "[t]here [was] no genuine issue as to any material fact," and that they were entitled to judgment as a matter of law because, among other things, "[the] plaintiff's claims in counts one and two are barred by the doctrine of res judicata and New York Real Property Actions and Proceedings Law § 1371 . . . ."[3] Specifically, the defendants contended that the plaintiff had an opportunity to raise a claim for a deficiency judgment in the foreclosure or bankruptcy proceedings but failed to do so. In support of the motion, the defendants filed a memorandum of law, various exhibits and the signed and sworn affidavit of Peter. On February 15, 2019, the plaintiff filed an objection to the defendants' motion along with various exhibits. On March 8, 2019, the defendants filed a reply memorandum.

In their memorandum of law, the defendants first argued that New York law applied to the plaintiff's claims, and that § 1371[4] required the plaintiff to obtain a deficiency judgment. Because the plaintiff did not move for a deficiency judgment in accordance with § 1371, they argued, the proceeds from the sale of the property constituted a full satisfaction of Lagoon's debt to the plaintiff, and the plaintiff was barred from seeking recovery under the guaranty. The defendants further argued that the plaintiff's breach of guaranty claims in counts one and two of the operative complaint were barred by res judicata because the issue of "whether any amount is owed by Lagoon under the note" could have been litigated in the foreclosure action or the bankruptcy proceedings. In making this argument, the defendants again relied on § 1371, stating that "New York law requires that [a] deficiency judgment be sought in the same action as the foreclosure (or in the bankruptcy) within ninety days of the sale."[5]

On April 8, 2019, the trial court held a hearing on the defendants' motion for summary judgment. On August 13, 2019, the trial court issued a memorandum of decision, denying the motion in its entirety. Before reaching the defendants' res judicata argument, the trial court addressed their argument that it was necessary for the plaintiff to obtain a deficiency judgment pursuant to § 1371. The trial court stated in relevant part: "[A]lthough Carlyle did foreclose on the mortgage, there was no foreclosure sale, either in the foreclosure action or in the bankruptcy proceeding. Instead, the property was sold pursuant to 11 U.S.C. § 363, as provided for

in the approved bankruptcy plan. . . . The terms of the [New York Real Property Actions and Proceedings Law], therefore, do not apply because the property was not sold in a New York foreclosure action pursuant to New York law." The trial court concluded that, "[b]ecause the property was not sold pursuant to a foreclosure action, § 1371 is inapplicable and the plaintiff was not required to seek a deficiency judgment." The trial court, relying on that conclusion, denied the defendants' motion for summary judgment, concluding that the breach of guaranty claims against them were not barred by res judicata.

On September 3, 2019, the defendants filed a "motion to reargue/reconsider summary judgment." On January 10, 2020, the trial court denied that motion in all respects relevant to this appeal. On January 29, 2020, the defendants appealed to this court.

On March 18, 2020, the defendants filed a motion for articulation with the trial court "so that [they] and the Appellate Court [could] understand the basis of the trial court's decision denying [their] motion for summary judgment on res judicata grounds." On September 8, 2020, the trial court issued an articulation in which it stated in relevant part: "[T]he court held that [§] 1371 was inapplicable because the defendants removed the proceedings to Bankruptcy Court. As a result, there was no foreclosure sale, which is a condition precedent to an application for a deficiency judgment under New York law . . . . The failure to apply for a deficiency judgment in the [§] 1371 proceeding cannot support a res judicata finding because it was not only an unnecessary component of the proceeding, it was precluded by the defendants' removal to Bankruptcy Court. The defendants cannot have it both ways. They cannot derail the foreclosure proceeding by removal, and then escape liability because the plaintiff did not obtain a foreclosure sale." Additional facts and procedural history will be set forth as necessary.

The defendants claim that the trial court erred in denying their motion for summary judgment because the plaintiff's breach of guaranty claims against them are barred by res judicata. We disagree.

We begin by setting forth the applicable legal principles and standard of review governing this claim. An interlocutory appeal may be taken from the denial of a motion for summary judgment based on res judicata or collateral estoppel. *Deutsche Bank AG* v. *Sebastian Holdings, Inc.*, 331 Conn. 379, 383 n.3, 204 A.3d 664 (2019). "The doctrine of res judicata holds that an existing final judgment rendered [on] the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause

of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action [that] were actually made or [that] might have been made. . . .

"The applicability of the [doctrine] of . . . res judicata presents a question of law that we review de novo. . . . Because [the doctrine is a] judicially created [rule] of reason that [is] enforced on public policy grounds . . . we have observed that whether to apply [the] doctrine in any particular case should be made based [on] a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. . . . These [underlying] purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments [that] undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . The judicial [doctrine] of res judicata . . . [is] based on the public policy that a party should not be able to relitigate a matter [that] it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs [that] results when a controversy is finally laid to rest. . . .

"We also have recognized, however, that the application of [the] doctrine has dramatic consequences for the party against whom it is applied, and that we should be careful that the effect of the doctrine does not work an injustice. . . . Thus, [t]he [doctrine] . . . should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." (Citation omitted; internal quotation marks omitted.) *Wellswood Columbia, LLC* v. *Hebron*, 327 Conn. 53, 65–66, 171 A.3d 409 (2017). "Generally, for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." *Wheeler* v. *Beachcroft, LLC*, 320 Conn. 146, 156–57, 129 A.3d 677 (2016). An "adequate opportunity to litigate" does not include a situation in which a court in prior litigation clearly does not have jurisdiction or clearly would have declined to exercise jurisdiction over a claim pursued by a plaintiff in subsequent litigation before a different court. See *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 44, 694 A.2d 1246 (1997) ("[i]f . . . the court in the first action *would clearly not have had jurisdiction* to entertain the omitted theory or ground (or, having jurisdiction, *would clearly have*

*declined to exercise it as a matter of discretion*), then a second action in a competent court presenting the omitted theory or ground should [be held not] precluded" (emphasis in original; internal quotation marks omitted)).

The defendants argue that the plaintiff could have pursued its claims under the guaranty agreement[6] in prior litigation. In their brief to this court, they state that "res judicata applies when a plaintiff has the *opportunity* to assert a claim in prior litigation, regardless of whether there is a requirement to do so." (Emphasis in original.) The prior litigation referred to is the New York Supreme Court foreclosure action as to the Bronx property against Lagoon and the Chapter 11 bankruptcy action filed by Lagoon. The crux of the defendants' argument is that because the plaintiff had the opportunity to raise its claims in the present case in the prior litigation, but did not, res judicata should bar it from raising those claims now. In response, the plaintiff disputes the applicability of res judicata to this case.

The following additional facts and procedural history are relevant. On December 15, 2016, the Bankruptcy Court issued an "order approving plan administrator's sale of property and proposed distribution of proceeds pursuant to plan." That order stated in relevant part that 33.87 percent of the proceeds from the sale of the property shall be distributed to the plaintiff, "which sum is less than the Allowed Amount of its Class 2C Claim[7] of $4,156,300 . . . ." (Footnote added.) The plaintiff argues that the Bankruptcy Court determined that Lagoon owed it $4,156,300 when it approved the "allowed amount" in its claim.[8] (Internal quotation marks omitted.) In its brief to this court, the plaintiff states: "To the extent this court is persuaded that the plaintiff had to determine the amount owed to it at bankruptcy in order to proceed against the guarantor (which is not the law), the sale order calculated this amount [to be $4,156,300 minus the proceeds from the sale]."

The defendants rely primarily on two bankruptcy cases to argue that the plaintiff "had an adequate opportunity to address its indebtedness claim against Lagoon in Lagoon's bankruptcy."[9] First, in *Crossland Federal Savings Bank* v. *LoGuidice-Chatwal Real Estate Investments Co.*, 159 B.R. 413, 420 (Bankr. S.D.N.Y. 1993) (*LoGuidice-Chatwal*), a bankruptcy court confirmed the foreclosure sale of certain real property and entered a deficiency judgment against the defendants after finding the market value of the property. The named defendant owned property on which an apartment building was constructed. Id., 414. Upon completion of the building, the named defendant obtained a mortgage, and it was unable to make the mortgage payments to the plaintiff. Id. After the plaintiff initiated a foreclosure action against the property, the named

defendant filed for bankruptcy. Id. The Bankruptcy Court rendered a judgment of foreclosure and sale of the property. Id. A foreclosure sale was held pursuant to § 1371, and the plaintiff, as the highest bidder, purchased the property. Id. The plaintiff then sought from the Bankruptcy Court a deficiency judgment against the defendants for the difference between the amount owing on the mortgage and the sale price. Id., 414–15.

The defendants in *LoGuidice-Chatwal* argued that the " 'fair and reasonable market value' " of the property was higher than the sale price and sought a finding of this value from the Bankruptcy Court. Id., 415. The Bankruptcy Court held a trial in which the plaintiff and the defendants presented evidence regarding their appraisals of the property. Id. The court then found the market value of the property and entered a deficiency judgment against the defendants pursuant to § 1371. Id., 420.

The facts of *LoGuidice-Chatwal* are easily distinguishable from those of the present case. Although *LoGuidice-Chatwal* illustrates that bankruptcy courts can enter deficiency judgments, they can do so only when a property is sold pursuant to a foreclosure sale. As the trial court noted in its memorandum of decision, there was no foreclosure sale in the present case. Nevertheless, the defendants argue that "*LoGuidice-Chatwal* demonstrates that there is no substantive difference between the bankruptcy and the foreclosure as it pertained to the sale of the Lagoon Property and [the plaintiff's] ability to pursue the indebtedness claim to obtain a deficiency judgment." In making this argument, the defendants appear to borrow from the requirements regarding deficiency judgments that are set forth in § 1371 and seek to apply them in the context of a bankruptcy sale. The defendants contend that the plaintiff "had an adequate opportunity to fully litigate its claim against Lagoon" by requesting a deficiency judgment from the Bankruptcy Court once the property was sold. The defendants have not cited any case in which a bankruptcy court has entered a deficiency judgment when a property is sold through a bankruptcy sale, rather than a foreclosure sale. They also do not explain what procedure the Bankruptcy Court would employ for doing so, or why the Bankruptcy Court would have an interest in making such a determination when the defendants were not parties to Lagoon's bankruptcy case.

The second case on which the defendants rely, *In re Futterman*, 602 B.R. 465, 468 (Bankr. S.D.N.Y. 2019) (*Futterman*), involved a deficiency claim by RWNIH-DL 122nd Street 1, LLC (RWN), a creditor, in the bankruptcy case of Hans Futterman, a real estate developer. The deficiency claim arose out of the bankruptcy cases of Ladera Parent, LLC, and Ladera, LLC (Ladera debtors). Id. Futterman signed a personal guaranty for loans

to the Ladera debtors to develop certain real property. Id., 468–69. The loans were secured by, among other things, priority mortgage liens and security interests on the real property and other development rights and interests Futterman had in certain other entities (Ladera properties). Id., 469. The Ladera debtors defaulted on the loans, and both entities filed for bankruptcy. Id. The Ladera properties were sold at auction pursuant to a bankruptcy sale. Id., 470. Around the same time, Futterman filed a personal bankruptcy petition, and RWN subsequently filed a claim in his case asserting a right to recover approximately $10 million pursuant to the guaranty. Id.

In disputing RWN's claim, Futterman relied in part on § 1371 and argued that he was entitled to a hearing to determine the fair market value of the Ladera properties. Id., 472–73. The court noted that § 1371 was inapplicable because no foreclosure judgment had entered, and no foreclosure sale had occurred. Id., 473. Rather, the Ladera properties were sold pursuant to a plan of reorganization. Id. The court reasoned that, even if § 1371 were applicable, "[t]he relevant 'foreclosure' action . . . would have been the proceedings that occurred in the Ladera [d]ebtors' cases, and it would have been in those cases (not . . . Futterman's bankruptcy case) that the amount of a deficiency judgment against the Ladera [d]ebtors would have been determined. The [c]ourt did make a determination, in the Ladera [d]ebtors' cases, of the amount of the deficiency claim for which the Ladera [d]ebtors themselves were liable." Id., 474. Furthermore, the RWN plan of reorganization provided that RWN would have an "RWN Deficiency Claim" against the Ladera debtors with a set formula as to how the deficiency would be calculated. (Internal quotation marks omitted.) Id. Thus, the court reasoned, in this hypothetical scenario, RWN would be able to hold Futterman liable for the deficiency calculated in the Ladera debtors' bankruptcy cases.

In the present case, the defendants rely on the *Futterman* court's hypothetical discussion of § 1371 to argue that "claims identical to [the plaintiff's] indebtedness claim can be addressed by the Bankruptcy Court, regardless of whether . . . § 1371 applies." Again, the defendants fail to cite a case, and we have found none, in which a bankruptcy court has entered a deficiency judgment after a property is sold pursuant to a bankruptcy sale. Furthermore, the facts of *Futterman* are significantly distinguishable from the facts in the present case. Futterman himself had filed for bankruptcy, and, consequently, the Bankruptcy Court had reason to determine his obligations to his creditors arising from the guaranty. Id., 470. In the present case, however, the defendants had not filed for bankruptcy and were not parties to the Bankruptcy Court proceeding. Therefore, there was no reason for the Bankruptcy Court to address whether there was any deficiency from the sale

that would trigger their obligations under the guaranty.

Accepting the defendants' argument as correct, however, the record indicates that the Bankruptcy Court did, in fact, determine the remaining amount that Lagoon owed the plaintiff after the sale of the property when it approved the "[a]llowed amount" in the plaintiff's Class 2C claim. Although the defendants assert on appeal that the Bankruptcy Court's statement that the allowed amount is $4,156,300 was in error or a misstatement, we are in no position to resolve such a factual question. Thus, the defendants' suggestion, at most, raises a question of fact that further undermines their claim that they are entitled to summary judgment. Regardless of the allowed amount recognized by the Bankruptcy Court, however, pursuant to the terms of the guaranty agreement, the parties were to litigate claims arising under the agreement in Connecticut state court.

In the alternative, the defendants argue that the plaintiff could have obtained relief from the bankruptcy stay to pursue its foreclosure action in New York state court. Had the plaintiff pursued the foreclosure action, they argue, the plaintiff could have obtained a deficiency judgment from that court pursuant to § 1371. We reject the notion that the plaintiff was required to do so in order to avoid the application of res judicata.

As the trial court noted, Carlyle commenced a foreclosure action in New York state court, but, because the defendants filed for bankruptcy and the property was sold pursuant to a bankruptcy sale, there was no foreclosure sale. By its terms, § 1371 only applies when a foreclosure sale occurs. See, e.g., *In re Futterman*, supra, 602 B.R. 473 ("[§] 1371 only applies if a foreclosure judgment is issued and if a foreclosure sale occurs"); *Berkshire Bank* v. *Tedeschi*, Docket No. 1:11-CV-0767 (LEK/CFH), 2013 WL 1291851, *8–9 (N.D.N.Y. March 27, 2013) (§ 1371 did not apply because defendant sold property and no foreclosure sale occurred), aff'd, 646 Fed. Appx. 12 (2d Cir. 2016); *Hometown Bank of Hudson Valley* v. *Colucci*, 127 App. Div. 3d 702, 704, 7 N.Y.S.3d 291 (2015) (§ 1371 did not apply because no foreclosure sale occurred). Thus, because the Lagoon property was sold pursuant to the bankruptcy plan, § 1371 did not apply to require the plaintiff to seek a deficiency judgment from the New York state court.

Nevertheless, the defendants argue that the plaintiff had the *opportunity* to litigate its "indebtedness claim" against Lagoon in the foreclosure action by seeking relief from stay in the bankruptcy proceedings. In support of this argument, they repeatedly cite *Steuben Trust Co.* v. *Buono*, 254 App. Div. 2d 803, 803–804, 677 N.Y.S.2d 852 (1998), and *In re Pittsford Polo Club, Inc.*, 188 B.R. 339, 344–45 (Bankr. W.D.N.Y. 1995), two cases that illustrate that bankruptcy courts have the power to lift automatic stays in order to allow parties to pursue

pending state court foreclosure actions against debtors' real property. The foreclosure action against Lagoon was never completed because Lagoon filed for bankruptcy.[10] Thus, the relevant proceeding here is the bankruptcy proceeding, and the issue is whether the plaintiff had the opportunity to fully litigate its breach of guaranty claims in *that* forum. By filing for bankruptcy, Lagoon evinced its intention to avoid a foreclosure sale. It would be unfair to prevent the plaintiff from pursuing the present action against the defendants merely because the plaintiff did not take issue with having the sale of the property occur in the venue of Lagoon's choosing.

In sum, we conclude that the trial court correctly held that the plaintiff's breach of guaranty claims against the defendants were not barred by the doctrine of res judicata. On the basis of our review of the case law and the record before us, we are unpersuaded that the plaintiff should be precluded, on the basis of res judicata, from bringing its claims in counts one and two. First, we are not satisfied that the plaintiff had an adequate opportunity to litigate its breach of guaranty claims against the defendants in Lagoon's bankruptcy proceeding. We are unaware of a case in which a plaintiff has pursued a breach of guaranty claim in a bankruptcy court against a guarantor who is not the subject of the underlying bankruptcy proceedings. See *Connecticut National Bank* v. *Rytman*, supra, 241 Conn. 44 (plaintiff does not have adequate opportunity to litigate when court in prior litigation would not have had jurisdiction over ground pursued by plaintiff in current litigation).

Furthermore, it was Lagoon, not the defendants, that was the subject of the bankruptcy proceedings. Thus, the Bankruptcy Court would not have had an interest in any contractual dispute between the plaintiff and the defendants, as guarantors, regarding the amount that the defendants owed. The defendants have not pointed to any relevant authority in which a guarantor has used res judicata to preclude a creditor from pursuing claims against it when it was not a party to the bankruptcy proceedings against the debtor.

We similarly conclude that the underlying principles of the doctrine of res judicata would not be served by precluding the plaintiff from bringing its claims in this case. In our view, this would not reduce repetitive litigation or prevent inconsistent judgments, nor would it provide repose to vexatious litigation. See *Wellswood Columbia, LLC* v. *Hebron*, supra, 327 Conn. 66. Finally, we conclude that the application of res judicata would unfairly impede the plaintiff's interest in the vindication of a potentially just claim. Id.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We will use the defendants' first names when referring to them in their

individual capacities.

[2] For clarity, we note that the second amended complaint alleges that both defendants reside in Connecticut. Additionally, the guaranty agreement, which the defendants filed as an exhibit with their motion for summary judgment, provides in relevant part: "The undersigned acknowledge and agree that the loan and this Guaranty have been made and entered into in the State of Connecticut and do hereby agree and consent to in personam jurisdiction and waive any claim of lack of in personam jurisdiction of the courts of the State of Connecticut, and do further waive right to trial by jury. . . .

"This agreement is intended to take effect as a sealed instrument and its validity and construction shall be determined by the laws of the State of Connecticut."

[3] The defendants also argued in their motion for summary judgment that each count was barred by the applicable statute of limitations, that count three must be dismissed for lack of subject matter jurisdiction because the plaintiff lacked standing to assert a claim of unjust enrichment and that count three failed as a matter of law because the defendants were not unjustly enriched. The court rejected each of these arguments and denied the defendants' motion on those grounds as well. Those portions of the court's ruling are not at issue in this appeal.

[4] Section 1371 of N.Y. Real Property Actions and Proceedings Law is titled "[d]eficiency judgment" and provides in relevant part: "(1) If a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the summons, the final judgment may award payment by him of the whole residue, or so much thereof as the court may determine to be just and equitable, of the debt remaining unsatisfied, after a sale of the mortgaged property and the application of the proceeds, pursuant to the directions contained in such judgment, the amount thereof to be determined by the court as herein provided.

"(2) Simultaneously with the making of a motion for an order confirming the sale, provided such motion is made within ninety days after the date of the consummation of the sale by the delivery of the proper deed of conveyance to the purchaser, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. . . . Upon such motion the court, whether or not the respondent appears, shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in at auction or such nearest earlier date as there shall have been any market value thereof and shall make an order directing the entry of a deficiency judgment. Such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus the amount owing on all prior liens and encumbrances with interest, plus costs and disbursements of the action including the referee's fee and disbursements, less the market value as determined by the court or the sale price of the property whichever shall be the higher.

"(3) If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist. . . ." N.Y. Real Prop. Acts. Law § 1371 (McKinney 2008).

[5] We note that the defendants' argument before the trial court focused on § 1371 and how that statute applied in Lagoon's bankruptcy proceedings. Accordingly, the trial court's memorandum of decision similarly focused on the applicability of § 1371 and whether the plaintiff could have sought a deficiency judgment pursuant to that statute in either the foreclosure court or the Bankruptcy Court. On appeal to this court, the defendants do not rely so heavily on § 1371. Instead, they have shifted their focus to the "indebtedness claim" that the plaintiff could have raised in Lagoon's bankruptcy proceedings, regardless of whether a foreclosure sale had taken place. See footnote 6 of this opinion. In so doing, they attempt to borrow the concept of a deficiency judgment from § 1371 and apply it in the context of a bankruptcy sale.

[6] In their brief to this court, the defendants state: "[The plaintiff's] claim against [the defendants in the present case] is premised on [the plaintiff's] assertion that, notwithstanding confirmation and completion of [the bankruptcy plan] in Lagoon's bankruptcy proceeding, which included selling the

mortgaged property and distributing the proceeds, Lagoon remains indebted to [the plaintiff] in an amount of $2,167,604.57 (the 'indebtedness claim')." Throughout their brief, the defendants use the term "indebtedness claim" to refer to the breach of guaranty claims in the present case, as well as to the request for a deficiency judgment that they argue the plaintiff could have made in Lagoon's foreclosure and bankruptcy cases. Essentially, they use this term to assert that there is a single claim that the plaintiff had the opportunity to raise prior to commencing the present action against them. We disagree, as the claims in the present case allege breaches of the guaranty agreement between the plaintiff and the defendants, rather than breaches of an agreement with Lagoon.

[7] Title 11 of the United States Code, § 1122, allows a proponent of a bankruptcy plan to classify substantially similar claims in a particular class. The plan of reorganization that was filed as part of Lagoon's bankruptcy proceedings lists each claim against Lagoon and its corresponding class number. The claim that the plaintiff points to was classified as a Class 2C claim.

[8] In its complaint, the plaintiff alleged that, at the time of the bankruptcy sale, Lagoon owed it a total of $4,160,850. The record contains no explanation for the relatively small discrepancy between that amount and the allowed amount listed in the Bankruptcy Court's sale order.

[9] We disagree with the defendants' characterization of the issue in the present case. The real inquiry with regard to the defendants' res judicata argument is whether Lagoon's bankruptcy proceedings provided the plaintiff with an adequate opportunity to litigate the breach of guaranty claims against the defendants in their individual capacities. In other words, it is not the claim against Lagoon that the plaintiff should have litigated in the prior proceedings but the plaintiff's claim against the defendants as guarantors.

[10] On May 16, 2013, the foreclosure court issued an amended order regarding Carlyle's motion for summary judgment in the foreclosure action against Lagoon. That order provided that a referee would be appointed to determine the amount owed, and, "on the confirmation of [the] [r]eferee's report, [Carlyle] shall have judgment of foreclosure and sale as prayed for in the [c]omplaint . . . ." On October 31, 2013, Lagoon filed for bankruptcy and the foreclosure action automatically was stayed pursuant to 11 U.S.C. § 362 (2012). The record does not indicate that the court ever rendered a judgment of foreclosure. The record contains a "[c]ase [d]etail" for the foreclosure action from the New York State Unified Court System that simply lists a "[d]isposition [d]ate" of September 20, 2018.